UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ELVIN KELLY                                                                                         PLAINTIFF

V.                                                    CIVIL ACTION NO. 3:20-CV-305-DPJ-FKB

CHRISTINE WORMUTH                                                                        DEFENDANT

ORDER

This employment dispute is before the Court on Defendant Secretary of the Army Christine Wormuth's Motion for Summary Judgment [37] as to Plaintiff Elvin Kelly's discriminatory-failure-to-promote claim.[1]  Kelly alleges that the Army Corps of Engineers ("the Corps") denied him a promotion based on his race and age, thereby violating Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act (ADEA).  Compl. [1] ¶¶ 57; 62–63.  For reasons that follow, the motion is granted as to Kelly's age-discrimination claim and denied as to his race-discrimination claim.

I.      Factual Background

In 2017, the Corps began accepting applications for a newly created engineering-technician position at their Information Technology Laboratory ("ITL").  Compl. [1] ¶ 23; Def.'s Supp. Mem. [38] at 2; Pl.'s Opp'n Mem [41] at 4.  When the Corps posted the job, Kelly, who is black, was already working for the Corps as Electrician Leader for the Directorate of Public Works in its Engineer Research & Development Center.  *See* Pl.'s Opp'n Mem. [41] at 2–3; Def.'s Supp. Mem. [38] at 2.  He had worked for the Corps for 27 years, initially hired as a high-

---

[1] Although this suit was originally brought against Ryan D. McCarthy, McCarthy no longer holds the office of Secretary of the Army; Defendant Christine Wormuth, the current Secretary of the Army, has been automatically substituted for McCarthy.  Fed. R. Civ. P. 25(d) ("[W]hen a public officer . . . is a party in an official capacity[,] . . . [t]he officer's successor is automatically substituted as a party."); *see* Pl.'s Opp'n Mem. [41] at 1 n.1.

voltage electrician in 1990 and promoted to electrician leader in 2012.  Pl.'s Opp'n Mem. [41] at 2–3.  Kelly was not selected for the new engineering-technician position.  Instead, the Corps promoted Jonathan Wilkinson, a white employee Kelly sometimes supervised and trained.  Def.'s Reply [43] at 4–5.  Feeling aggrieved, Kelly filed this suit and now opposes Defendant's motion for summary judgment.  The issues are fully briefed, and the Court has both personal and subject-matter jurisdiction to consider the motion.

II.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  If no "reasonable jury could return a verdict for the nonmoving party," summary judgment is appropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

When contradictory facts do exist, courts may "not make credibility determinations or weigh the evidence."  *Id.* at 150.  They must "interpret all facts and draw all reasonable inferences in favor of the nonmovant."  *EEOC v. Rite Way Serv.*, 819 F.3d 235, 239 (5th Cir. 2016); *accord Tolan v. Cotton*, 572 U.S. 650, 660 (2014).  But "conclus[ory] allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argument[s] do not adequately substitute for specific facts showing a genuine issue for trial."  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)); *accord Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

III.     Title VII Analysis

Title VII precludes race-based discrimination in employment. 42 U.S.C. § 2000e-2. A plaintiffs may bring Title VII claims using "direct or circumstantial evidence, or both." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002). Kelly pursues a circumstantial case, so the familiar *McDonnell Douglas* burden-shifting analysis applies at the summary-judgment stage. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). While the "'ultimate' burden of persuasion . . . 'remains at all times with the [employee],' the failure of a party to meet its burden of production at each step may allow judgment against that party." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 235–37 (5th Cir. 2016) (quoting *Tex. Dep't Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

First, a plaintiff must create a genuine issue of material fact as to each element of the *prima facie* case—"that he or she was (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated." *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 341 (5th Cir. 2005). Second, the employer must "articulate some legitimate, nondiscriminatory reason for the [disputed action]." *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (quoting *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)). "If the employer submits such reasons, the burden shifts back to the employee to show that those reasons are pretextual." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 521 (5th Cir. 2021) (citation omitted).[2]

---

[2] There are two causation standards that might apply at the final stage of this analysis. Title 42 U.S.C. § 2000e-2(a) make it unlawful for an employer to discriminate "because of" race and therefore carries a "but-for" standard. *Cf. Bostock v. Clayton County*, 140 S. Ct. 1731, 1739–40 (2020) (U.S. 2020) (discussing the same standard in the sex-discrimination context). Under § 2000e-2(m), the causation standard is whether the plaintiff's race was a "motivating factor." *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Kelly states in his memorandum that "there is sufficient evidence for a jury to find that the supervisor was motivated (*at least in part*) by race."

Defendant offers no argument challenging Kelly's *prima facie* case, and Kelly does not suggest that Defendant failed to satisfy its burden of showing a legitimate nondiscriminatory reason for the decision. So the question is whether Kelly has created a jury question on pretext.

In general terms, Defendant argues that it relied on an objective scoring system to review applicant resumes and Wilkinson had the highest score. Def.'s Supp. Mem. [38] at 3–5, 6–7. While both he and Kelly scored well, Wilkinson's score allegedly exceeded Kelly's because Wilkinson's resume revealed greater detail regarding his experience and he had greater experience with ITL's Uninterruptable Power Systems ("UPS").[3] *Compare* Wilkinson Evaluation [37-8] at 1–3, *with* Kelly Evaluation [37-7] at 1–3.

Kelly says those reasons are a pretext for discrimination. Pretext may be shown "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017) (quoting *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010)). When proving pretext, a plaintiff is "not limited to presenting evidence of a certain type." *Stennett v.*

---

Pl.'s Opp'n Mem. [41] at 1 (emphasis added). But he never expressly addresses the applicable causation theory, nor is he required to make that election at this stage. *See Smith v. Xerox Corp.*, 602 F.3d 320, 333 (5th Cir. 2010), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013); *see also Adams v. Mem. Hosp.*, 973 F.3d 343, 352–53 (5th Cir. 2020) (holding that plaintiffs are not required to "concede the legitimacy of the employer's stated reason" and noting that a court must base jury instructions on the theories supported by the trial evidence). Because summary judgment is unwarranted under either theory, the Court will address this issue at trial. *Smith*, 602 F.3d at 333.

[3] A UPS is a unit providing short-term emergency power when a primary power source fails. Kelly Dep. [37-1] at 30; Meadows Dep. [40-3] at 30–31, 33. S&C is the manufacturer, and Purewave is the brand. *See* DOD File [40-1] at 82 n.2, 224; Meadows Dep. [40-3] at 34. UPS is also sometimes said to stand for "uninterruptable power system"—"'supply' and 'system' get used almost interchangeably." Meadows Dep. [40-3] at 30. ITL had three UPS systems. *Id.* at 31.

*Tupelo Pub. Sch. Dist.*, 619 F. App'x 310, 316 (5th Cir. 2015) (per curiam) (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 187 (1989), *superseded on other grounds by statute*, 42 U.S.C. § 1981)).

Kelly begins by arguing that he is clearly better qualified than Wilkinson. To show pretext using qualifications alone, a plaintiff must show he or she "was 'clearly better qualified' such that 'the qualifications are so widely disparate that no reasonable employer would have made the same decision.'" *Martinez v. Tex. Workforce Comm'n*, 775 F.3d 685, 687 (5th Cir. 2014) (quoting *Moss v. BMC Software*, 610 F.3d 917, 923 (5th Cir. 2010)). Here, Kelly had 11 years more experience than Wilkinson at the Corps; had at times trained and supervised Wilkinson; had nine more work-related commendations; and had no disciplinary issues, whereas Wilkinson had two prior arrests (one for an alleged assault at work and a second for stealing government property for which he was suspended).[4]

Viewed in the light most favorable to Kelly, a reasonable jury might find that he was more qualified than Wilkinson. But "employers are generally free to weigh the qualifications of prospective employees, so long as they are not motivated by race. Indeed, an employee's 'better education, work experience, and longer tenure with the company do not establish that he is clearly better qualified.'" *Martinez*, 775 F.3d at 688 (quoting *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 723 (5th Cir. 2002)); *accord Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 381 (5th Cir. 2018). And here, Defendant has emphasized Wilkinson's superior experience working

---

[4] Defendant says the factual record for the arrests is based on Kelly's own statements in an investigative file. But that does not necessarily mean Kelly lacked personal knowledge of them, or, more importantly, that the "fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Regardless, Defendant acknowledges the first arrest, arguing that it is not relevant. That argument goes to weight.

*directly* on ITL's S&C Purewave UPS.  *See* DOD File [40-1] at 186; Def.'s Supp. Mem. [38] at 6–8, 11–12; Def.'s Reply [43] at 4–5, 11–14.  Kelly has not shown that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."  *Moss*, 610 F.3d at 923.[5]

In addition to qualifications, Kelly says Defendant has misrepresented the selection process.  The parties agree that the decisionmaker was William Steve Meadows, Jr., an electrical engineer the Corps asked to review the applications and make a recommendation.  DOD File [40-1] at 152.  Patti Duett rubber stamped Meadows's recommendation to promote Wilkinson.  *See* Duett Dep. [40-2] at 19.  According to Meadows, he rated each application using a scoresheet he designed based on the job announcement.  Meadows Dep. [40-3] at 20–23.  And Defendant cites those scores as the basis for the decision.  But Kelly has created a fact question whether Meadows had time to complete those scoresheets before making his recommendation.

Meadows received an email with the applications from Management and Program Analyst Dolores Lanier at 2:46 p.m.  Pl.'s Opp'n Mem. [41] at 4–5 (citing DOD File [40-1] at 19).  Meadows testified that he first printed the application packet and then began reviewing the resumes and applicant questionnaires as he completed the scoresheets.  Meadows Dep. [40-3] at 21–22.  Meadows emailed his recommendation just 52 minutes after the 2:46 p.m. email.  Pl.'s Opp'n Mem. [41] at 4–5 (citing DOD File [40-1] at 19).  But Meadows has since recanted that testimony, stating that he was mistaken and that Lanier gave him hard copies of the applications.

---

[5] That said, the relative qualifications might be relevant.  *Compare Stennett*, 619 F. App'x at 319 (citing *Pratt v. City of Houston*, 247 F.3d 601, 607 (5th Cir. 2001)) (finding question of fact on pretext where plaintiffs offered superior resumes and other pretext evidence), *with Moss*, 610 F.3d at 923 (holding that unless clearly better, any "differences in qualifications are generally not probative evidence of discrimination").  There is no need to dig deeper into this issue because Kelly otherwise offers sufficient evidence.

Meadows Decl. [43-3] ¶ 5.  While Meadows does not say when that occurred, Lanier states in her declaration that it was around 12:40 p.m., which would have given Meadows about three hours for the task.  Lanier Decl. [43-2] ¶¶ 2–5.

Meadows may well have misremembered what happened, but there is at least an argument that the Court should ignore his subsequent declaration because it is "markedly inconsistent" with his sworn testimony.  *Clark v. Resistoflex Co., A Div. of Unidynamics Corp.*, 854 F.2d 762, 766 (5th Cir. 1988).  Assuming the Court may consider the declaration, Rule 56 does not allow the Court to weigh Meadows's statements against each other.  Viewing the evidence in the light most favorable to Wilkinson, Meadows first saw the resumes at 2:46 p.m., just 52 minutes before he made his recommendation.

Kelly says that was not enough time, which calls into question whether Defendant relied on those scores as it now says.  The argument finds support in Meadows's deposition.  Meadows testified that he carefully reviewed all applications and scored them before making his recommendation.  Meadows Dep. [40-3] at 21–22.  Yet Meadows also said that he considered seven applications.  *Id.* at 26.  And when asked how long it would have taken to "look at [Kelly's] application and writ[e] out [his] notes," Meadows replied, "[D]efinitely more than five minutes.  It would take me longer than five minutes *to read* [the resume]."  Meadows Dep. [40-3] at 25 (emphasis added).  He elaborated that, due to his dyslexia, 20 minutes "very well could be" a low estimate of how long it would take him just to read Kelly's resume, though he could not say so with certainty.  *Id.* at 25–26.

Defendant notes the uncertainty in Meadows's response.  Def.'s Reply [43] at 7–8.  But Meadows's self-described difficulties create a jury question whether he could have studied seven applicant packages (which included resumes and questionnaires) and then scored them within 52

minutes—an average of seven minutes per application. Moreover, Meadows did not attach the scoresheets when he made his recommendation; he first produced them two weeks later when Kelly filed a complaint. While Defendant offers a very different account, the Court may not weigh the evidence. And because Defendant relies on Meadows's scoresheets as the basis for the decision, this factual issue is alone sufficient to create a material dispute at the pretext stage.

Kelly does not stop there. He also argues that Meadows told Wilkinson—but not Kelly—about the opening; that at least some scores are arguably inconsistent with the comparative resumes; and that basing the decision on Wilkinson's allegedly superior experience with the UPS is pretext given Wilkinson's overall experience and the extent to which that system is relevant to the job. *See* Pl.'s Mem. [41] at 4–8. Some of those arguments seem better than others, but each flows from a disputed material fact. They are not, as Defendant argues, mere speculation and conjecture.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148. Kelly has met his burden; summary judgment is denied as to Title VII race-based discrimination claim.

IV.     ADEA Analysis

Defendant argues that Kelly has abandoned his age-discrimination claim. Def.'s Reply [43] at 2–3. Indeed, Kelly's Response [40] and Opposition Memorandum [41] make *no* mention of his age, Wilkinson's youth, the ADEA, or age discrimination. Conversely, race discrimination is discussed on virtually every page. *See* Pl.'s Opp'n Mem. [41]. Kelly has also made no request to file a surreply explaining the omission or otherwise contesting Defendant's

abandonment theory.  For that reason, the Court agrees with Defendant:  Kelly has abandoned his age-discrimination claim.

V.      Conclusion

The Court has considered all arguments.  Those not addressed would not alter the outcome.  For the stated reasons, Defendant's Motion for Summary Judgment [37] is granted in part and denied in part; it is granted as to Kelly's age-discrimination claim and denied as to Kelly's race-discrimination claim.  The parties are instructed to contact the magistrate judge within seven days of this Order to reset the settlement conference, pretrial conference, and trial.

**SO ORDERED AND ADJUDGED** this the 14th day of February, 2022.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE